IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA, for the use of
PREFERRED MASONRY RESTORATION, INC.

                Plaintiff,

-against-

INTERNATIONAL FIDELITY INSURANCE COMPANY.

                Defendant

Civil Action No. 17-1358

<u>DEMAND FOR JURY TRIAL</u>

---

Use Plaintiff, Preferred Masonry Restoration, Inc. by its attorneys Goldberg Segalla, complaining of the Defendant International Fidelity Insurance Company alleges as follows:

### PARTIES

1.    Use Plaintiff, Preferred Masonry Restoration, Inc., is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 201 Kintner Hill Road, Upper Black Eddy, Pennsylvania 18972 ("Subcontractor"). Subcontractor is engaged in the business of commercial masonry restoration, including historic masonry restoration.

2.    Upon information and belief, Defendant International Fidelity Insurance Company, is a corporation duly organized and existing under the laws of the State of New Jersey with a principal place of business located at One Newark Center, Newark, New Jersey 07102 ("Surety").

6224472.1

3. Upon information and belief, Surety is duly authorized to and is engaged in the business of issuing and executing surety bonds, including payment bonds, in the State of New York.

## JURISDICTION AND VENUE

4. Use Plaintiff brings this action under the under the Miller Act, 40 U.S.C. §§ 3131-3134. Therefore, this court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

5. Venue in this judicial district is proper pursuant to 28 U. S.C. §1391(b) as the Project (defined herein) is located in this District and the work performed and duties and obligations arising out of and under the Prime Contract (defined herein) and Subcontract (defined herein) all occurred in this judicial district.

## FACTUAL BACKGROUND

### The Construction Contracts and Payment Bond

6. This action arises out of a construction project for the United States National Park Service (the "Park Service") for the rehabilitation of the exterior of the Vanderbilt Mansion located in Hyde Park, New York.

7. Upon information and belief, S.J. Thomas Company, Inc. is a corporation duly organized and existing under the laws of the State of New York and maintains an office located at 300 Burnet Avenue, Syracuse, New York 13203 ("General Contractor").

8. Upon information and belief, General Contractor is engaged in the business of commercial construction, including work on projects in the State of New York.

9. On or about February 25, 2015, General Contractor entered into a written contract with the United States of America, acting through the Park Service, DPSC Contracting Services

2

Division, bearing Contract No. P15PS0036-000002, for the rehabilitation of the exterior of the Vanderbilt Mansion located at 119 Hyde Park Road, Hyde Park, New York 12538 (the "Prime Contract" and the "Project", respectively).

10. In accordance with the terms of the Prime Contract, the Surety issued Payment Bond No. PAIFSU06365 dated May 26, 2015 with a penal sum of $2,646,000.00 for the Project ("Bond").

11. The Bond was duly accepted by the United States and, on such acceptance, the Prime Contract was awarded to General Contractor.

12. On or about May 28, 2015, General Contractor and the Subcontractor entered into a "Standard form Agreement Between Contractor and Subcontractor" in connection with the Prime Contract (the "Subcontract").

13. The Subcontract includes the terms of the Prime Contract. (*See* Subcontract, Article 1, Section 1.1 attached as **Exhibit A**). The Prime Contract and the Subcontract are referred to collectively as the "Contracts".

14. Pursuant to the terms of the Prime Contract, the General Contractor was responsible for the restoration of the exterior of the Vanderbilt Mansion, including stone repair and rehabilitation, stone paving, ornamental work rehabilitation and window and door restoration. (*See* Prime Contract at Sections C, J and Appendix attached as **Exhibit B**).

15. The initial amount of the Prime Contract was $3,430,800.00.

16. Pursuant to the terms of the Subcontract, Subcontractor was responsible for restoration and rehabilitation of four massive porticos which included replacement of stone elements and brick restoration, removal of all steps for the porticos, demolition of the existing

6224472.1

concrete foundations, replacement of the concrete foundations and brickwork, and resetting the stones.

17. The initial amount of the Subcontract was $1,157,600.00.

18. After change orders and the completion of additional work requested by the General Contractor, the total amount of the Subcontract was $1,262.098.66

Payment Provisions of the Contracts

19. Under the Prime Contract, the General Contractor's monthly application for payment ("General Contractor's Payment Request") was to be submitted electronically and include a) the Park Service pay estimate form, b) certification of Subcontractor payments; c) an updated schedule of values; and d) any additional documentation requested by the contracting officer. *See* **Exhibit B** at p. 20. The Park Service was required to pay the General Contractor fourteen (14) days "after the designated billing office receives a proper payment request." *See* **Exhibit B** at p. 111 (Section 52.232-27).

20. The Prime Contract also requires that all subcontracts under the Prime Contract include prompt payment to subcontractors for satisfactory performance no later than seven (7) days from the receipt of payment from the Park Service. The General Contractor's failure to make timely payments to a subcontractor entitles the subcontractor to interest . **See Exhibit B** at pp. 113-114.

21. Under the Subcontract, the Subcontractor was obligated submit a payment request to the General Contractor covering the preceding month on the 23rd day of each month ("Subcontractor Payment Request"). If timely received, the General Contractor was obligated to submit the Subcontractor's Payment Request to the "Architect" with its General Contractor Payment Request for approval and if paid, the "[General] Contractor <u>shall</u> pay the Subcontractor

4

no later than seven working days after the Contractor receives payment from the Owner." *See* **Exhibit A** at Section 11.3.

Written Notice Required to Withhold Payment

22.     While the Prime Contract permits the General Contractor to withhold part or all of a Subcontractor's Payment Request, specific procedures must be followed before doing so including issuing written notice of the withholding to the subcontractor (with a copy furnished to the contracting officer) specifying: 1) the amount to be withheld; 2) the specific causes for the withholding under the terms of the subcontract; and 3) the remedial action to be taken by the subcontractor in order to receive payment of the amounts withheld ("Withholding Notice Requirements"). *See* **Exhibit B** at pp. 111-116.

23.     Section 118 of the Subcontract also requires written notice to the Subcontractor before withholding payment and expressly states that "[u]pon the partial or entire disapproval by the [General] Contractor of the Subcontractor's application for payment, the Contractor shall provide written notice to the Subcontractor. <u>When the basis for the disapproval has been remedied, the Subcontractor shall be paid the amounts withheld</u>" (emphasis added) *See* **Exhibit A**.

24.     During the course of its Work on the Project, Subcontractor timely submitted monthly Subcontractor Payment Requests to General Contractor for work performed and materials supplied on the Project in the prior month.

25.     Subcontractor submitted a total of fourteen (14) Subcontractor Payment Requests to General Contractor on the dates and in the amounts set forth in **Exhibit C** and in the total amount of $1,262,098.66.

26.     General Contractor only paid Subcontractor $993,627.11.

27. General Contractor failed and refused to pay Subcontractor $268,471.55 ("Outstanding Balance").

28. In refusing to pay the Subcontractor the Outstanding Balance, General Contractor failed to comply with the Withholding Notice Requirements of both the Prime Contract and the Subcontract.

29. General Contractor's acts and omissions regarding the Withholding Notice Requirements and failure to pay the Outstanding Balance constitute a breach of the Contracts.

30. Subcontractor has additional claims against General Contractor for delays and acceleration under the Contracts that must be pursued through arbitration pursuant to the terms of the Subcontract and, therefore, Subcontractor's claims here are limited to those compensable under the terms of the Bond and the Miller Act and this action is not a waiver of any other claims.

### Subcontractor's Claims for Payment Are Timely and Comply with the Requirements of the Bond and the Miller Act

31. Subcontractor last performed work and provided materials on the Project in connection with the Subcontract on August 19, 2016.

32. On or about, August 22, 2016, General Contractor barred Subcontractor from performing any further work under the Subcontract at the Project – without providing written notice and a ten-day period to cure as provided under Section 7.2.1 and in breach of the terms of the Contracts.

33. More than ninety (90) days have elapsed since the last date that Subcontractor's work was performed at the Project.

34. Additionally, because Subcontractor stands in privity with General Contractor, no prior written notice of a claim is required pursuant to 40 U.S.C. §3133(b)(1). Nonetheless,

6

6224472.1

Subcontractor sent Surety written notice of is claim under the Bond by letter dated January 9, 2017.

35. Less than one year has elapsed since the last date Subcontractor performed work on the Project and therefore, Subcontractor's claim is timely under 40 U.S.C. §3133(b)(1).

36. Accordingly, Subcontractor has complied with all rules and requirement of the Miller Act for perfecting a right of action under the Bond and all conditions precedent to the making of this claim have been performed, occurred, or have been waived by General Contractor.

37. General Contractors acts and omissions entitle Subcontractor to payment under the Bond and the Miller Act.

## CLAIM FOR RELIEF UNDER THE MILLER ACT

38. Subcontractor restates and incorporates by reference the allegations set forth in Paragraphs 1 through 37 above, as if set forth herein.

39. Subcontractor entered into binding written agreement with General Contractor.

40. Under the terms of the Contracts, Surety issued the Bond.

41. General Contractor has breached the terms of the Contracts by virtue of the acts and omissions alleged above including General Contractor's failure and refusal to pay Subcontractor the sum of $268,471.55 for work performed and materials supplied in connection with the Contracts and on the Project.

42. Subcontractor is a proper claimant under the Bond.

43. Subcontractor's claims under the Bond are timely pursuant to U.S.C. §3133(b)(1) and Subcontractor has complied with all other conditions precedent under the Bond and the Miller Act to pursue its claims against Surety here.

44. Surety is liable to Subcontractor under the Bond in the amount of $268,471.55.

WHEREFORE, Subcontractor demands judgment against Surety as follows:

a. In the amount the amount of Two Hundred Sixty-Eight Thousand Four Hundred Seventy-One Dollars and Fifty-Five Cents ($268,471.55) for labor and materials supplied pursuant to the Subcontract;

b. Pre-Judgment interest accruing from the date payment was due on each Subcontractor Payment Request at the interest rate specified in the Prime Contract through the date of judgment;

c. Post-judgment interest on that amount from the and after the date of judgment until paid in full;

d. All reasonable costs and expenses; and

e. Such further relief as this Court deems just and proper.

## JURY DEMAND

Subcontractor demands a trial by jury of all issues triable of right by a jury.

DATED: February 22, 2017
White Plains, New York

GOLDBERG SEGALLA LLP

William G. Kelly, Esq.
Laura Ashley Martin, Esq.
*Attorneys for Use Plaintiff*
11 Martine Avenue, Suite 750
White Plains, New York 10606
(914) 798-5400